**HONE LAW**
Jennifer W. Arledge, NV Bar No. 8729
jarledge@hone.law
Kelly B. Stout, NV Bar No. 12105
kstout@hone.law
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074
Phone  702-608-3720
Fax      702-608-7814

Nitoj P. Singh, CA Bar No. 265005*
nsingh@dhillonlaw.com
Anthony J. Fusaro, Jr., CA Bar No. 345017*
afusaro@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
Phone  415-433-1700
Fax      415-520-6593
*Admitted Pro Hac Vice*

*Attorneys for Plaintiff*
NATIONAL SPECIALTY PHARMACY LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NATIONAL SPECIALTY PHARMACY LLC,<br><br>                              Plaintiff,<br><br>vs.<br><br>MAYBELLINE SANA, an individual; RAYNE BRIDGES, an individual; and DOES 1 to 49, inclusive,<br><br>                              Defendants. | Case No. 2:25-cv-00295-CDS-MDC<br><br>**PLAINTIFF NATIONAL SPECIALTY PHARMACY LLC'S OPPOSITION TO DEFENDANT SANA'S MOTION TO DISMISS / MOTION FOR SUMMARY JUDGMENT** |

1
2

**TABLE OF CONTENTS**

3   I.    Introduction ...................................................................................................... 1

4   II.   Statement of Relevant Facts ............................................................................. 2

5   III.  Legal Standard .................................................................................................. 5

6   IV.   Legal Argument ................................................................................................ 7

7       A.   This Court has jurisdiction over NSP's claims because the requirements of
             federal question jurisdiction and supplemental jurisdiction are satisfied. ......... 7
8
        B.   NSP has stated a prima facie case of trade secret misappropriation against
9            Sana because it has standing to bring the claim, and its allegations identify
             legally protected trade secrets, Sana's misappropriation of them, and
10           resulting damages ............................................................................................. 8

11      C.   NSP has stated a prima facie case of breach of contract against Sana
             because it alleges conduct by Sana that clearly breached the conflict of
12           interest and confidentiality provisions of her employment agreement with
             NSP. ................................................................................................................ 12
13
        D.   NSP's request for injunctive relief is not moot because Sana still possesses
14           NSP's trade secrets and may, without this Court's intervention, disclose
             them to another competitor. ............................................................................. 14
15
    V.    Conclusion ...................................................................................................... 15

16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Acri v. Varian Assocs., Inc.*,
  114 F.3d 999 (9th Cir. 1997) ................................................................. 7

*Allen v. United States*,
  964 F.Supp.2d 1239 (D. Nev. 2013) ....................................................... 6

*Alta Devices, Inc. v. LG Elecs., Inc.*,
  343 F.Supp.3d 868 (N.D. Cal. 2018) ............................................... 9, 11

*Ashcrot v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................... 5, 10

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994) .................................................................. 6

*Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*,
  312 F.Supp.3d 944 (D. Nev. 2018),
  *on reconsideration in part*, No. 315CV00294MMDVPC,
  2018 WL 3127454 (D. Nev. June 26, 2018) .......................................... 9

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) .............................................................. 5

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
  559 F.3d 110 (2d Cir. 2009) ................................................................. 14

*Galbraith v. Cnty. of Santa Clara*,
  307 F.3d 1119 (9th Cir. 2002) .............................................................. 6

*Gallagher Benefit Servs., Inc. v. De La Torre*,
  283 F.App'x 543 (9th Cir. 2008) .................................................... 9, 11

*Gilligan v. Jamco Dev. Corp.*,
  108 F.3d 246 (9th Cir.1997) ................................................................. 6

*Henry Schein, Inc. v. Cook*,
  191 F.Supp.3d 1072 (N.D. Cal. 2016) ............................................ 10, 11

*Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*,
  808 P.2d 919 (Nev. 1991) ............................................................. 12, 13

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
  978 F.3d 653 (9th Cir. 2020) ...................................................... 8, 9, 11

*Kizer v. PTP, Inc.*,
  129 F.Supp.3d 1000 (D. Nev. 2015) ..................................................... 6

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ................................................................ 6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .............................................................................. 8

*Oakwood Lab'ys LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021) ........................................................ 10, 11

*Park v. Park*,
   367 P.3d 808 (Nev. 2010) ........................................................................... 12

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir.1984) ........................................................................ 6

*Saini v. Int'l Game Tech.*,
   434 F. Supp. 2d 913 (D. Nev. 2006) ....................................................... 12, 14

*Traffic Control Servs., Inc. v. United Rentals Nw., Inc.*,
   87 P.3d 1054 (Nev. 2004) ......................................................................... 12

*United Mine Workers of America v. Gibbs*,
   383 U.S. 715 (1966) .................................................................................. 7

*WeRide Corp. v. Kun Huang*,
   379 F.Supp.3d 834 (N.D. Cal. 2019) ..................................................... 10, 11

*WWMAP, LLC v. Birth Your Way Midwifery*,
   711 F.Supp.3d 1313 (N.D. Fla. 2024) ...................................................... 8, 11

**Statutes**

18 U.S.C. § 1836(b)(1) ...................................................................................... 8

18 U.S.C. § 1836(b)(3)(A) ................................................................................ 14

18 U.S.C. § 1839(5) ........................................................................................... 9

18 U.S.C.A. § 1839(3) ....................................................................................... 9

18 U.S.C.A. § 1839(5) ....................................................................................... 9

28 U.S.C. § 1331 ................................................................................................ 7

28 U.S.C. § 1367 ................................................................................................ 7

8 U.S.C. § 1836(b)(3) ...................................................................................... 10

**Rules**

Fed. R. Civ. P. 12(d) .......................................................................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This Action arises out of conduct by three former employees of Plaintiff National Specialty Pharmacy, LLC ("Plaintiff" or "NSP") to steal NSP's trade secrets to unfairly compete against NSP, in breach of their contracts with NSP and in violation of applicable law. Defendants Maybelline Sana ("Sana") and Rayne Bridges ("Bridges") conspired with Sameer Padhye ("Padhye") to start competitor Taycann LLC ("Taycann"), doing business as Taycann Wellness, with NSP's intellectual property. These faithless former-employees are now seeking to avoid liability for the significant harm they caused to NSP.

This Court should deny Sana's Motion to Dismiss, or in the alternative her Motion for Summary Judgment, because she fails to demonstrate (1) that this Court does not have subject matter jurisdiction of NSP's claim, (2) that NSP does not have standing to bring a claim against her for misappropriation of trade secrets, or (3) that NSP has not stated plausible claims, and provided evidence, against her for trade secret misappropriation and breach of contract.

As explained below, each of Sana's arguments fails as a matter of law and is contradicted by the detailed factual allegations set forth in the Complaint, and in the accompanying declaration of Sanjiv Dhawan. First, the Court has subject matter jurisdiction over NSP's claims because the Complaint alleges violations of a federal statute—the Defend Trade Secrets Act ("DTSA")—and the state-law claims arise from the same nucleus of operative fact, invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

Second, NSP has standing to bring its trade secret misappropriation claims because it has alleged concrete injury, causation, and redressability, and shown that the trade secrets at issue were used in interstate commerce, satisfying DTSA's statutory requirements.

Third, NSP has stated a prima facie claim for trade secret misappropriation under both the DTSA and the Nevada Uniform Trade Secrets Act ("UTSA"). NSP identifies the trade secrets with specificity, describes the reasonable steps NSP took to protect them, and states with particularity the ways in which Sana misappropriated them to benefit a competitor. NSP also plausibly alleges damages resulting from this conduct.



Fourth, NSP has stated a viable breach of contract claim by alleging that Sana violated both express and implied obligations in her employment agreement, including confidentiality and conflict-of-interest provisions. These breaches caused substantial harm to NSP's operations and competitive standing, resulting in cognizable damages.

Finally, NSP's claim for injunctive relief is not moot. The threat of future harm remains real and ongoing because Sana continues to possess NSP's confidential and proprietary information, and NSP intends to continue to utilize those confidential and proprietary information for future business. Without injunctive relief, nothing prevents her from disclosing these trade secrets to another competitor.

Therefore, as shown below, this Court should deny Sana's Motion to Dismiss in its entirety and allow NSP's valid claims to proceed to discovery. To the extent the Court regards Sana's Motion to Dismiss as a Motion for Summary Judgment, though premature and without the benefit of discovery, NSP has included a declaration for evidentiary support.

## II.    STATEMENT OF RELEVANT FACTS

NSP is a compounding pharmacy that provides various life-saving drugs and durable medical equipment to patients primarily in Nevada, and in 16 other states. (ECF No. 1 at ¶ 13 (Complaint)); Declaration of Sanjiv Dhawan (Exhibit "1," attached, "Dhawan Decl." at ¶2.) Its business focuses on serving patients holding Pharmacy Benefits Cards issued by the U.S. Department of Labor, also known as "White Cards." (ECF No. 1 at ¶ 14; Dhawan Decl. at ¶ 3.) The White Card program is obscure and not widely pursued by other pharmaceutical companies. (*Id*.) NSP spent seven years of labor and significant capital investment to obtain approval for and develop its White Card business, which encompasses the development, compounding, marketing, and sale of pharmaceuticals and other medical products, including those under government contracts. (*Id*. ¶¶ 14-15.)

The end result of NSP's labor and financial investment are databases (the "Databases") that store *inter alia*, complex patient information, including, but not limited to, patient name and contact information, the patient's diagnosis and pharmaceutical purchase history, medical provider (including type of medical provider), and how long they had been in the White Card program.



2

(ECF No. 1 at ¶¶ 36, 135; Dhawan Decl. at ¶ 5.) As NSP marketing efforts were primarily targeted at referring medical providers, the database allowed users to sort by medical providers, and ascertain how much NSP business was associated with each medical provider. (Dhawan Decl. at ¶ 5.) In the wrong hands, the Database would allow competitors to quickly and easily target NSP's biggest revenue sources.

In addition, NSP developed a customer resource management system ("CRM") using the platform Monday.com, which organizes information from the Databases and presents it in a user-friendly manner. (ECF No. 1 at ¶ 42; Dhawan Decl. at ¶ 6.) The Databases and CRM contain the type of customer lists that are regularly found to be protectable trade secrets, and a more specific identification of NSP's trade secrets is attached as Exhibit 1-A to the Dhawan Declaration.

To comply with industry law and regulation, including the Health Insurance Portability and Accountability Act ("HIPAA"), NSP invests heavily in security measures to protect its proprietary information, including encryption, password protection, physical security, legal review, and binding written agreements for employees with confidentiality and nondisclosure provisions. (ECF No. 1 at ¶ 17; Dhawan Decl. at ¶ 7.) The confidentiality of NSP's proprietary processes and information is crucial to its success—if its competitors accessed this information, they could duplicate NSP's products, target its patients and business partners, and capture its market share. (ECF No. 1 at ¶ 18; Dhawan Decl. at ¶ 7.)

Defendant Sana began her employment with NSP as a pharmacy technician on May 21, 2018, and was later promoted to Director of Operations and Human Resources in the Fall of 2022.[1] (ECF No. 1 at ¶ 29; Dhawan Decl. at ¶ 9, Ex. 1-B.) During her tenure, Sana worked closely with Padhye, NSP's former Chief Strategy Officer, who founded the competing venture Taycann, and is a defendant in a related case in the Northern District of California. (ECF No. 1 at ¶¶ 2, 30; Dhawan Decl. at ¶ 9-11, Exs. 1-B and 1-C.) When Sana was hired, she signed an employment agreement (the "Agreement"), in which she agreed to maintain confidential information, avoid

---

[1] Sana also goes by the name "Maybelline Ash," as reflected on her employment agreement. (Dhawan Decl. at ¶ 9, Ex. 1-B.)

conflicts of interest, and comply with confidentiality provisions. (*Id.* ¶ 102.) Specifically, Sana agreed that "during and after my employment with [NSP], I will hold in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information." (*Id.*)

Beginning at least in in the first half of 2023, Padhye began to develop Taycann, a direct competitor to NSP. (ECF No. 1 at ¶ 32; Dhawan Decl. at ¶ 11.) Taycann was incorporated in 2022. (*Id.*) Padhye wholly shunned his duties to develop NSP's business in favor of developing Taycann, leaving NSP in a perilous state.

Notwithstanding their employment agreements, Sana and Bridges accepted Padhye's invitation to assist him in launching Taycann while all were still employed by NSP. (ECF No. 1 at ¶¶ 2, 32-33; Dhawan Decl. at ¶ 12.) For months, she concealed this conflict of interest, providing her with continued access to NSP's confidential trade secrets for Taycann's benefit. (ECF No. 1 at ¶¶ 75-78.) Sana, Bridges, and Padhye's lack of loyalty to NSP meant they were shirking their NSP duties in favor of building Taycann. During this period, NSP employees noticed that Sana, Padhye, and Bridges frequently held secret meetings that other employees were not privy to. (ECF No. 1 at ¶ 55; Dhawan Decl. at ¶ 11.) Once they determined to leave NSP and focus on Taycann, Sana and the co-conspirators coordinated their resignation dates within one month of each other. (ECF No. 1 at ¶ 62; Dhawan Decl. at ¶ 12.)

Sana resigned from NSP on July 5, 2023, with an effective date of July 31, 2023, though she ceased working for NSP by July 14, 2023. (ECF No. 1 at ¶ 65; Dhawan Decl. at ¶ 12.) On the eve of Padhye's resignation on June 22, 2023, while Sana was still employed with NSP, she emailed him trade secret information from NSP's proprietary Databases—information seemingly sent to gather information in preparation of launching Taycann. (ECF No. 1 at ¶ 41; Dhawan Decl. at ¶ 12.) Later, by misleading Monday.com personnel, Padhye gained exclusive use of NSP's CRM for a period and locked out all NSP users. (ECF No. 1 at ¶ 42; Dhawan Decl. at ¶ 13.) When NSP regained access to the system, it discovered several references to Taycann, with comments by Sana noting her sales success on Taycann's behalf. (ECF No. 1 at ¶ 43; Dhawan Decl. at ¶ 13.)

Following her resignation, Sana solicited NSP personnel, including Benjamin Brown, to perform marketing work for her new venture, Taycann, in violation of her employment agreement. (ECF No. 1 at ¶ 71; Dhawan Decl. at ¶ 14.) She also engaged in disruptive conduct during her employment, including spreading false statements to NSP employees—such as claiming NSP's CEO Sanjiv Dhawan wished harm on a senior employee and his wife, and fabricating Dhawan's net worth to incite dissatisfaction—all of which damaged employee morale and NSP's operations. (ECF No. 1 at. ¶¶ 57-60; Dhawan Decl. at ¶ 16.)

As a result of Sana, Bridges, and Padhye's actions, NSP suffered significant financial and reputational harm. NSP regularly had income of over $10 million per year, with 2022 net profit of over $3.4 million, but that was down in 2023 to net profit of over $2.3 million after the conduct complained of herein by Sana, Bridges, and Padhye. (Dhawan Decl. ¶ 16.) Their misappropriation of trade secrets allowed a competitor (Taycann) to exploit proprietary information that NSP spent years developing and safeguarding. (*Id*. ¶ 72.) Their solicitation of employees and disruptive conduct fractured NSP's workforce and hindered its operations. (ECF No. 1 at ¶¶ 71-72; Dhawan Decl. at ¶ 17.) In the end, the unlawful conduct, exodus from NSP, shirking of NSP duties, and discord sowed amongst NSP's workforce and ultimately caused NSP to pause its business operations while it regroups and rehires. However, NSP continues to maintain its leases, continues to own its pharmaceutical equipment, and is considering its relaunch plans. (Dhawan Decl. at ¶ 16.) Sana and her co-conspirators, Padhye and Bridges, left NSP grappling with lost business, compromised proprietary information, and fractured relationships—consequences that still harm NSP to this day.

## III.    LEGAL STANDARD

To survive a motion to dismiss, "a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Kizer v. PTP, Inc.*, 129

1    F.Supp.3d 1000, 1005 (D. Nev. 2015) (*quoting Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249

2    (9th Cir.1997)).

3        "A complaint may be dismissed as a matter of law for one of two reasons: '(1) lack of a

4    cognizable legal theory, or (2) insufficient facts under a cognizable legal claim.'" *Allen v. United*

5    *States*, 964 F.Supp.2d 1239, 1251 (D. Nev. 2013) (quoting *Robertson v. Dean Witter Reynolds,*

6    *Inc.,* 749 F.2d 530, 534 (9th Cir.1984)). In making this determination, "[a]llegations in the

7    complaint are taken as true and construed in the light most favorable to the plaintiff." *Kizer*, 129

8    F.Supp.3d at 1005 (*citing Allen*, 964 F.Supp.2d at 1251).

9        Defendant's reliance on exhibits outside the four corners of the Complaint, if not excluded,

10   may convert the Rule 12(b)(6) motion to dismiss into a motion for summary judgment. See Fed.

11   R. Civ. P. 12(d) (stating that if "matters outside the pleadings are presented to and not excluded

12   by the court, the motion must be treated as one for summary judgment under Rule 56"). Courts

13   have routinely recognized that "[a] district court may not consider any material beyond the

14   pleadings in ruling on a Rule 12(b)(6) motion" without converting the motion into one for

15   summary judgment and giving all parties a reasonable opportunity to present pertinent material,

16   except that "documents whose contents are alleged in a complaint and whose authenticity no party

17   questions, but which are not physically attached to the pleading, may be considered in ruling on a

18   Rule 12(b)(6) motion to dismiss." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001);

19   *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds by *Galbraith v.*

20   *Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). Where the motion is converted, the moving

21   party must meet the stringent standards of Rule 56 and the nonmoving party must be afforded the

22   procedural safeguards and opportunity for discovery warranted under Rule 56(d).

23       Here, NSP has had no meaningful opportunity to conduct discovery or develop facts

24   essential to oppose what effectively operates as a Rule 56 motion. Granting summary judgment at

25   this nascent stage, where pertinent facts remain undeveloped, would violate the fundamental

26   fairness required by the Federal Rules of Civil Procedure and controlling Ninth Circuit precedent.

27   Accordingly, Sana's motion should be evaluated solely under the Rule 12(b)(6) standard and the

28



1  exhibits should be disregarded, or, in the alternative, the motion should be denied as premature

2  until NSP has been afforded the opportunity to conduct adequate discovery.

3  **IV.    LEGAL ARGUMENT**

4        **A.    This Court has jurisdiction over NSP's claims because the requirements of
5               federal question jurisdiction and supplemental jurisdiction are satisfied.**

6        Federal courts have jurisdiction over questions of federal law and may exercise

7  supplemental jurisdiction over related state law claims. 28 U.S.C. §§ 1331, 1367. Under federal

8  question jurisdiction, no amount in controversy is required. *See* 28 U.S.C. §§ 1331.

9        Supplemental jurisdiction applies to state law claims that share a common nucleus of

10 operative fact with the federal claim, such that they form part of the same case or controversy. *See*

11 *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *Acri v. Varian Assocs., Inc.*,

12 114 F.3d 999, 1000 (9th Cir. 1997) (*en banc*).

13       Here, NSP asserts a claim under the DTSA, a federal statute, which invokes federal

14 question jurisdiction. *See* 28 U.S.C. § 1331. Further, NSP's state law claims against Defendant

15 Sana—including fraudulent concealment, civil conspiracy to commit fraud, breach of contract,

16 breach of fiduciary duty, intentional interference with contractual relations, and misappropriation

17 of trade secrets under Nevada's UTSA—arise from the same set of facts: Sana's fraudulent conduct

18 in misappropriating trade secrets for a competitor in violation of her employment agreement. (ECF

19 No. 1 at ¶¶ 74-88, 100-126, 146-156.) Because these claims share a common nucleus of operative

20 fact with NSP's DTSA claim, supplemental jurisdiction is appropriate under 28 U.S.C. § 1367.[2]

21 *See Gibbs*, 383 U.S. at 725; *Acri*, 114 F.3d at 1000.

22

23

---

24 [2] Sana's contention that NSP engaged in forum shopping by filing in Nevada after she was
   dismissed from NSP's California action against Padhye is without merit. (*See* Defendant Sana's
25 Motion to Dismiss ("Sanna Mot.") at 7.) As Sana is aware, the Northern District of California ruled
   that NSP could not establish personal jurisdiction over her and co-Defendant Bridges in California.
26 (*See* Compl. ¶ 5.) Accordingly, NSP elected to pursue its claims against Sana and Bridges in
   Nevada, where it could establish personal jurisdiction over both Defendants. The traditional
27 concern implicated by forum shopping—selecting a jurisdiction with favorable precedent—was
   absent from NSP's decision to file this action against Sana and Bridges in Nevada, and there is no
28 evidence to the contrary.



1    Therefore, this Court has subject matter jurisdiction over NSP's claims, as the DTSA claim

2    establishes federal question jurisdiction, and this Court may exercise supplemental jurisdiction

3    over NSP's related state law claims.

4    **B. NSP has stated a prima facie case of trade secret misappropriation against Sana because it has standing to bring the claim, and its allegations identify**

5    **legally protected trade secrets, Sana's misappropriation of them, and resulting damages.**

6

7    The elements required to state a claim under the Defend Trade Secrets Act ("DTSA") are

8    virtually identical to those required under the Nevada Uniform Trade Secrets ACT ("UTSA"), and

9    courts often analyze claims under both statutes together. *See generally InteliClear, LLC v. ETC*

10   *Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) ("*InteliClear*").

11   To establish standing under either statute, the plaintiff must (1) be an "owner of a trade

12   secret that is misappropriated," *see* 18 U.S.C. § 1836(b)(1), and (2) meet the requirements for

13   Article III standing: injury, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S.

14   555, 560-61 (1992). Additionally, under the DTSA, a trade secret must be "related to a product or

15   service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1);

16   *see also WWMAP, LLC v. Birth Your Way Midwifery*, 711 F.Supp.3d 1313, 1324 (N.D. Fla. 2024)

17   ("*WWMAP*") (holding that trade secrets used by a medical provider operating across state lines

18   satisfies the interstate commerce requirement).[3]

19   To state a prima facie case of trade secret misappropriation, a plaintiff must establish the

20   following elements:

21       1. a valuable trade secret;

22

23

24   [3] Notwithstanding Sana's contentions to the contrary, there is no requirement that a plaintiff "retain

25   an active business interest in the trade secrets it seeks to protect," or that the plaintiff lacks a protectable interest if it ceases operations. (*See* Sana Mot. at 4.) Rather, all that matters is that the plaintiff owns the trade secret it seeks to protect and suffered damages as a result of that trade

26   secrets misappropriation. Thus, although NSP is not currently operating—in large part due to the Defendants' conduct and the discord they sowed within NSP—it remains a licensed business with

27   the Nevada Secretary of State's Office. The fact that NSP is not currently operating does not detract from its ownership of its trade secrets or its right to recover damages for their misappropriation. If

28   anything, it only underscores the lasting damage caused by Defendants' misconduct.



2.  misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and

3.  the requirement that the misappropriation be wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose.

*Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*, 312 F.Supp.3d 944, 958 (D. Nev. 2018), *on reconsideration in part*, No. 315CV00294MMDVPC, 2018 WL 3127454 (D. Nev. June 26, 2018).

A "trade secret" is defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information".

18 U.S.C.A. § 1839(3).

At the pleading stage, a plaintiff must identify the alleged trade secrets with reasonable particularity, meaning enough detail to distinguish it from general knowledge. *See InteliClear*, 978 F.3d at 657; *see also Gallagher Benefit Servs., Inc. v. De La Torre*, 283 F.App'x 543, 545 (9th Cir. 2008) ("*Gallagher*") (holding that a business's "customer-related information, such as its customers' key contacts and preferences," qualified as a trade secret); *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F.Supp.3d 868, 881 (N.D. Cal. 2018) ("*Alta Devices*") (holding that "confidential business plans" qualified as trade secrets under the DTSA).

Further, "misappropriation" is defined as, *inter alia*, use of a trade secret of another without express or implied consent by a person who at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret. 18 U.S.C.A. § 1839(5); *see also* 18 U.S.C. § 1839(5); *WeRide Corp. v. Kun Huang*, 379 F.Supp.3d 834, 848

9

1   (N.D. Cal. 2019) (holding that downloading files before leaving employment constituted

2   misappropriation) (observing that "direct evidence of misappropriation is rare"); *Henry Schein,*

3   *Inc. v. Cook*, 191 F.Supp.3d 1072, 1077 (N.D. Cal. 2016) (holding that downloading and e-mailing

4   confidential customer data for a competitor constituted misappropriation).

5       Finally, damages resulting from the defendant's misappropriation must be plausibly

6   alleged at the pleading stage, not precisely calculated. *See Oakwood Lab'ys LLC v. Thanoo*, 999

7   F.3d 892, 914 (3d Cir. 2021) ("*Oakwood*") (holding that even where the defendants had not used

8   the plaintiff's trade secrets to launch a competing pharmaceutical product, the harm caused by the

9   defendants' misappropriation was sufficient to allege the existence of resulting damages); *see*

10  *generally Twombly*, 550 U.S. at 555; *Ashcrot v. Iqbal*, 556 U.S. 662, 678 (2009).

11      Here, NSP has standing under the DTSA because its allegations demonstrate that each

12  requirement of Article III standing has been satisfied, and that it has identified trade secrets used

13  in interstate commerce.

14      First, NSP alleges an injury-in-fact—the first requirement of Article III standing—by

15  demonstrating specific economic harms resulting directly from Sana's misappropriation of its trade

16  secrets, including lost clients, diminished goodwill, and reduced market share. (ECF No. 1 at ¶¶

17  72–73.) Second, NSP establishes the causation required under Article III by clearly linking Sana's

18  unauthorized disclosure and use of its confidential information—including emailing trade secrets

19  to Padhye and providing them to Taycann Wellness—to the economic harm NSP suffered. (ECF

20  No. 1 at ¶¶ 41, 65.) Moreover, NSP specifically alleges that Sana's misuse targeted its existing

21  patients and providers, confirming the direct causal relationship between Sana's conduct and

22  NSP's harm. (ECF No. 1 at ¶¶ 72–73). Third, NSP's harms are redressable through monetary

23  damages and injunctive relief, remedies explicitly authorized by the DTSA. *See* 18 U.S.C. §

24  1836(b)(3). Thus, NSP's claim against Sana for trade secret misappropriation satisfies each

25  requirement for Article III standing.

26      Next, NSP's allegations show that its trade secrets were used in interstate commerce.

27  Specifically, NSP alleges that it used its patient data, proprietary formulas, and pricing strategies

28  to support its nationwide White Card business, with patients across multiple states, including but



not limited to Nevada, California, and Tennessee. *See WWAMP*, 711 F.Supp.3d at 1324; (ECF No. 1 at ¶¶ 1, 4, 13, 67-68, 123, 132, 159, 161.) These allegations clearly establish that NSP's trade secrets were directly related to products and services used in interstate commerce.[4]

Further, NSP has identified its trade secrets with the requisite particularity to qualify for protection under the UTSA and the DTSA. Specifically, NSP has identified its proprietary patient information, vendor and medical provider lists, pricing strategies, marketing data, and pharmaceutical formulas as confidential business information that derives independent economic value from not being generally known or readily ascertainable. *See InteliClear*, 978 F.3d at 657; *Gallagher*, 283 F.App'x 543, 545; *Alta Devices*, 343 F.Supp.3d at 881 (ECF No. 1 at ¶¶ 15-19, 36-37, 136.) NSP has also alleged that it took reasonable steps to maintain the secrecy of this information through encryption, password protection, physical security, legal reviews, and binding written agreements for employees. (ECF No. 1 at ¶¶ 17-19.) Because this information provides NSP with a competitive advantage and was safeguarded to prevent disclosure, it qualifies as a trade secret under the DTSA.

Moreover, NSP has plausibly alleged that Sana misappropriated its trade secrets by emailing them to Padhye shortly before his departure from NSP and disclosing them to Taycann, a direct competitor. *See WeRide*, 379 F.Supp.3d at 846; *Henry Schein*, 191 F.Supp.3d at 1077; (ECF No. 1 at. ¶¶ 17, 41, 65.)

Finally, NSP has adequately alleged damages exceeding $75,000, directly tied to Sana's misappropriation of its trade secrets. *See Oakwood*, 999 F.3d at 914; (ECF No. 1 at ¶¶ 72–73, 163.) Sana's contention that NSP's allegations of lost business are insufficient to establish damages lacks merit at the pleading stage, where exact calculations are not required, and damages resulting from DTSA violations are easily deduced from the misappropriation itself. *See Oakwood*, 999 F.3d at 914.

---

[4] Unlike NSP's pleadings in *One Way Drug*, its allegations here specify that its trade secrets were directly related to NSP's products and services in states other than Nevada. (*See* Sana Mot. at 6) (citing Ex. B, *Nat'l Specialty Pharmacy, LLC v. One Way Drug, LLC*, Case No 2:21-cv-01082-JAD-VCF (D. Nev. Sept. 28, 2021).) Consequently, the reasoning of the *One Way Drug* court is easily distinguished and inapplicable to NSP's Complaint here.

Accordingly, NSP has stated a prima facie case of trade secret misappropriation against Sana because its allegations establish standing under the DTSA and UTSA, identify valid trade secrets used in interstate commerce, demonstrate Sana's misuse of those trade secrets, and plausibly allege resulting damages.

> **C. NSP has stated a prima facie case of breach of contract against Sana because it alleges conduct by Sana that clearly breached the conflict of interest and confidentiality provisions of her employment agreement with NSP.**

Under Nevada law, a breach of contract claim requires: (1) a valid contract, (2) a breach by the defendant, and (3) resulting damages. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006). Confidentiality clauses within employment agreements are enforceable. *See Traffic Control Servs., Inc. v. United Rentals Nw., Inc.*, 87 P.3d 1054, 1057 (Nev. 2004).

Further, a covenant of good faith and fair dealing is implied in every contract. *Park v. Park*, 367 P.3d 808 (Nev. 2010). This covenant is breached "[w]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991) ("*Hilton*"). The reasonableness of a party's expectations under a contract is "determined by the various factors and special circumstances that shape these expectations." *Id.* at 923-24 (holding that a party may breach the implied covenant of good faith and fair dealing by deliberately undermining the other party's contractual benefits, even while technically complying with the contract's express terms).

Here, NSP's allegations clearly establish that Sana breached the conflict of interest and confidentiality provisions of her employment agreement with NSP. In signing her employment agreement, Sana agreed that "during and after [her] employment with NSP, [she] [would] hold in the strictest confidence, and take all reasonable precautions to prevent the unauthorized use or disclosure of Company Confidential Information." (ECF No. 1 at ¶¶ 17-19, 101-102.) Her Agreement defines "Company Confidential Information" to include the proprietary formulas, pricing strategies, marketing methods, and computer and software processes that NSP developed over seven years and took reasonable measures to protect. (ECF No. 1 at ¶¶ 15-19.) The Agreement

1  also contains a confidentiality clause applying to third-party information, including HIPAA-

2  protected data regarding patients, vendors, and medical providers that NSP possessed. (ECF No.

3  1 at ¶¶ 15-19, 101-102.) Additionally, Sana's Agreement includes a conflict-of-interest provision,

4  whereby she agreed not to engage in any activity conflicting with her obligations to NSP, such as

5  working for a direct competitor. (ECF No. 1 at. ¶¶ 101-102.)

6         As detailed above, Sana breached the express provisions of her employment agreement by

7  working for a direct competitor and providing that competitor with NSP's confidential information

8  and trade secrets. Specifically, Sana emailed trade secrets to Padhye, which were then utilized for

9  Taycann, and later directly worked for Taycann, a competitor, using NSP's confidential

10 information. (ECF No. 1 at. ¶¶ 41, 71.) Given that NSP later discovered references to Taycann in

11 NSP's CRM system, including comments by Sana noting her sales successes on Taycann's behalf,

12 the most reasonable deduction is that Sana used NSP's confidential information to benefit

13 Taycann. (ECF No. 1 at ¶ 43.) Thus, Sana's conduct constitutes a breach of the conflict of interest

14 and confidentiality provisions in her employment agreement.

15        In addition, Sana's conduct violated her implied covenant of good faith and fair dealing

16 because she acted in a manner unfaithful to the purpose of her employment agreement and NSP's

17 justified expectations. Rather than honoring her obligation to promote NSP's interests with

18 integrity, she concealed her work for a competitor, misappropriated NSP's confidential

19 information, and took actions directly adverse to NSP's interests, such as spreading false

20 statements to disrupt operations. (ECF No. 1 at ¶¶ 57-60.) NSP's expectation that Sana would

21 comply with her confidentiality and conflict of interest obligations was entirely justified, as these

22 requirements were explicitly outlined in her employment agreement. *See Hilton*, 808 P.2d at 922-

23 24; (ECF No. 1 at ¶¶ 101-102.) Thus, NSP has also properly alleged that Sana's conduct violated

24 her implied covenant of good faith and fair dealing.

25        Further, Sana's breach of contract caused NSP substantial harm, including the loss of

26 proprietary trade secrets, financial losses, and reputational damage. By providing Taycann with

27 NSP's confidential information, such as patient data and marketing strategies, Sana undermined

28 NSP's competitive advantage and enabled Taycann to capitalize on years of NSP's investment in



its proprietary processes, marketing strategies, and client relationships. (ECF No. 1 at ¶¶ 41, 43.) Her actions also resulted in the loss of business opportunities, as NSP was deprived of the chance to replace her with an employee committed to its interests. (ECF No. 1 at ¶ 71.) Additionally, her unauthorized use of NSP's resources and disruptive conduct, such as spreading false statements about NSP personnel, caused direct financial harm, including increased costs for employee retention and operational disruptions. (ECF No. 1 at ¶¶ 57-60.)

Therefore, NSP has stated a claim for breach of contract against Sana by alleging that she violated her express contractual obligations and the implied covenant of good faith and fair dealing, thereby causing NSP substantial financial and competitive harm.

**D. NSP's request for injunctive relief is not moot because Sana still possesses NSP's trade secrets and may, without this Court's intervention, disclose them to another competitor.**

Under the DTSA, a court may grant an injunction to prevent actual or threatened misappropriation of trade secrets. 18 U.S.C. § 1836(b)(3)(A). A claim for injunctive relief is not moot if there remains a reasonable likelihood of future harm, such as the defendant disclosing trade secrets they possess. *See Saini*, 434 F. Supp. 2d at 919 (holding that the risk an employee may disclose confidential information or trade secrets can create the irreparable harm sufficient to warrant a preliminary injunction); *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) ("*Faiveley*") (explaining that a risk of irreparable harm exists "where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets").

Here, NSP's request for injunctive relief is not moot because Sana still possesses the trade secrets she misappropriated, creating a risk of disclosure to another competitor. (ECF No. 1 at ¶¶ 30, 35.) Contrary to Sana's argument that NSP's request for injunctive relief is moot because she no longer works for Taycann, her possession of the trade secrets and ability to disclose them—not her employment status—drives the analysis. *See Saini*, 434 F. Supp. 2d at 919; *Faiveley*, 559 F.3d at 118.

1    Accordingly, NSP's request for injunctive relief is valid because Sana's possession of

2 NSP's trade secrets creates a risk of future disclosure that this Court can prevent.

3 **V.    CONCLUSION**

4    For the foregoing reasons, NSP respectfully requests that this Court deny Sana's Motion

5 to Dismiss in its entirety. In the alternative, NSP requests leave to amend its complaint, or conduct

6 discovery in advance of a ruling on this motion.

7 Dated this 15th day of April 2025.

8                                      HONE LAW

9                                      *Jennifer W. Arledge*

10                                     Jennifer W. Arledge, NV Bar No. 8729
                                       jarledge@hone.law
11                                     Kelly B. Stout, NV Bar No. 12105
                                       kstout@hone.law
12                                     701 N. Green Valley Parkway, Suite 200
                                       Henderson, NV 89074
13
14                                     Nitoj P. Singh, CA Bar No. 265005*
                                       nsingh@dhillonlaw.com
15                                     Anthony J. Fusaro, Jr., CA Bar No. 345017*
                                       afusaro@dhillonlaw.com
16                                     Dhillon Law Group Inc.
                                       177 Post Street, Suite 700
17                                     San Francisco, CA 94108
                                       *Admitted pro hac vice.*
18
19                                     *Attorneys for Plaintiff*
                                       NATIONAL SPECIALTY PHARMACY *LLC*
20
21
22
23
24
25
26
27
28



15

**CERTIFICATE OF SERVICE**

I certify that I am an employee of Hone Law and that on Tuesday, April 15, 2025, I caused a true and correct copy of the foregoing PLAINTIFF NATIONAL SPECIALTY PHARMACY LLC'S OPPOSITION TO DEFENDANT SANA'S MOTION TO DISMISS / MOTION FOR SUMMARY JUDGMENT to be served on the following individuals in the manner designated:

| | |
|---|---|
| Rayne Bridges<br>bridgesrayne@gmail.com<br>7340 Jelson Falls Street<br>Las Vegas, NV 89131<br><br>*Pro Se* | Method of Service:<br>☐ U.S. Mail, first class postage pre-paid<br>☐ E- Mail:<br>   (by consent under Rule 5(b)(2)(E))<br>☒ The Court's electronic filing system<br>☐ Other: |
| Maybelline Sana<br>5345 Tartan Hill Ave.<br>Las Vegas, NV 89141 | Method of Service:<br>☐ U.S. Mail, first class postage pre-paid<br>☐ E- Mail:<br>   (by consent under Rule 5(b)(2)(E))<br>☒ The Court's electronic filing system<br>☐ Other |

/s/ Candice Ali
Candice Ali, an employee of HONE LAW



**PLAINTIFF NATIONAL SPECIALTY PHARMACY LLC'S
OPPOSITION TO DEFENDANT SANA'S MOTION TO DISMISS / MOTION FOR
SUMMARY JUDGMENT**

| Exhibit | Description | Pages |
|---------|-------------|-------|
| 1 | Declaration of Sanjiv Dhawan | 26 |